## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 17 2019, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shawn P. Morrell, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | January 17, 2019 <br><br> Court of Appeals Case No. 18A-CR-1282 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Donald L. Daniel, Senior Judge <br><br> Trial Court Cause No. 79C01-1711-F5-151 |

**Sharpnack, Senior Judge.**

# Statement of the Case

Shawn P. Morrell appeals from the sentence imposed by the trial court after his conviction of one count of domestic battery,[1] a Level 5 felony, contending that the trial court abused its discretion in imposing a sentence of five years for the offense. We affirm.

# Issues

Morrell claims that the trial court abused its discretion during sentencing by considering improper factors. More specifically, Morrell raises the following claims:

> I. Did the trial court abuse its discretion by improperly citing Morrell's individual risk assessment score as an aggravating factor?
>
> II. Did the trial court abuse its discretion by improperly considering Morrell's juvenile history during sentencing?

# Facts and Procedural History

The facts supporting the trial court's judgment of conviction after a bench trial follow. Morrell and his girlfriend A.W. were involved in an intimate, romantic relationship and lived together at A.W.'s house. On the evening of October 29, 2017, A.W. was at her daughter's apartment babysitting her grandchildren

---

[1] Ind. Code § 35-42-2-1.3(a)(1), -(c)(4)(A) (2016).

while her daughter worked. After the grandchildren were asleep, sometime after dark on that date or in the early morning hours of October 30, 2017, Morrell joined A.W. at the apartment. According to A.W., Morrell exhibited signs of paranoia by looking out of the windows, checking in closets, and inquiring if A.W. had hidden police officers in the apartment. Morrell subsequently admitted that he was under the influence of drugs. Tr. p. 47.

[4] Eventually, A.W. fell asleep. When she awoke, Morrell was not beside her where she had expected to find him. When she reached for her cell phone prior to attempting to locate him in the apartment, she noticed that her phone was not in its case. She looked for Morrell and discovered that a light was on in the bathroom. Morrell emerged from the bathroom holding A.W.'s cell phone. A.W. went to another room where she found Morrell's cell phone. Although she was unable to enter a correct pass code to unlock his phone, she pretended to be accessing information on the phone.

[5] After Morrell returned her phone to her, A.W. noticed that he had deleted the contact information she had for his other girlfriend, a person with whom she communicated. After A.W. returned his phone to him, Morrell believed that A.W. had done something to cause his phone to malfunction. The two argued about meddling with each other's phones. At one point during the argument, Morrell grabbed A.W. by the shoulders and head butted her. A.W.'s eye immediately began to hurt, and a lump formed on her forehead.

[6] A.W. stayed at her daughter's apartment until her daughter returned home from work. When A.W. got in her car to leave, Morrell was sitting in the passenger seat. The two waited at A.W.'s house until the urgent care facility opened before going there. A nurse at the urgent care facility called for assistance from law enforcement officers upon hearing A.W. report that Morrell, who was also there at the facility, had caused her injury. Morrell noticed that staff were frequently glancing at him as he smoked a cigarette outside and left before law enforcement officers arrived. A responding law enforcement officer spoke with A.W. about her injury and observed bruising and swelling above A.W.'s left eye. Those injuries were documented by officers.

[7] On November 16, 2017, the State charged Morrell with one count of domestic battery as a Level 5 felony, and one count of domestic battery as a Class A misdemeanor. Later, the State added a charge of invasion of privacy as a Class A misdemeanor for alleged contact between Morrell and A.W. after the entry of an order for no contact.

[8] At the conclusion of a bench trial held on April 10, 2018, the trial court found Morrell not guilty of invasion of privacy. The court found Morrell guilty of domestic battery as a Level 5 felony[2] and merged the conviction for domestic battery as a misdemeanor offense with the felony conviction. The trial court

---

[2] Morrell admitted at trial that he had a prior conviction for domestic battery which elevated the offense from a misdemeanor to a felony.

imposed its sentence and Morrell now appeals, challenging factors considered by the trial court during sentencing.

## Discussion and Decision

The sentencing range for a Level 5 felony is a fixed term of between one and six years with the advisory sentence being three years. Ind. Code § 35-50-2-6(b) (2014). The trial court imposed a sentence of five years, with three and a half years executed at the Indiana Department of Correction, one year at community corrections, and six months on supervised probation.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016). One way in which a trial court may abuse its discretion is by omitting from its sentencing statement "reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law." *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (2007). Nonetheless, "a trial court can not . . . be said to have abused its discretion in failing to 'properly weigh'" aggravators or mitigators. *Id*. Additionally, if a sentencing court improperly applies an aggravating circumstance but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Means v. State*, 807 N.E.2d 776, 788 (Ind. Ct. App. 2004), *trans. denied.* When we can "identify sufficient aggravating circumstances to persuade us that the trial court would have entered the same sentence even without the impermissible factor, it

should affirm the trial court's decision." *Id.* (quoting *Day v. State*, 560 N.E.2d 641, 542 (Ind. 1990)).

[11] During the sentencing hearing, the trial court stated the following reasoning when imposing Morrell's sentence:

> Conviction having been entered against Shawn Patrick Morrell on Count 1, [d]omestic battery, a [L]evel 5 felony[,] the court now finds that an aggravating circumstance is the defendant's criminal history. The court notes three juvenile adjudications, two other juvenile contacts, three felony convictions, two misdemeanor convictions. Seven cases which have unknown disposition[s]. At least one failure to appear and two pending petitions to revoke probation. Second aggravating circumstance is that the defendant's IR[A]S his individual risk assessment score is high, likely to re-offend. Third aggravating circumstance is his history of illegal alcohol and drug use. A mitigating circumstance is that the defendant does have mental health issues. Another mitigating circumstance although it is not a great weight is that the defendant has one dependent child. A third mitigating circumstance is that the defendant has worked to better himself by obtaining his GED while he is in custody. The court finds that the aggravating circumstances outweigh the mitigating circumstances.

Tr. p. 88.

## I. Individual Risk Assessment Score

[12] Morrell argues that we must remand the matter of sentencing due to the trial court's erroneous consideration of this aggravating circumstance. We decline to remand the matter on these grounds for reasons we more fully explain below

but agree that the trial court abused its discretion when designating Morrell's IRAS as an aggravating circumstance.

[13]     In a pair of decisions issued on the same day, our Supreme Court clarified how individual risk assessment scores should be treated for purposes of sentencing. *See Malenchik v. State*, 928 N.E.2d 564 (Ind. 2010) and *J.S. v. State*, 928 N.E.2d 576 (Ind. 2010).

[14]     In *Malenchik*, 928 N.E.2d at 573, 575, the Supreme Court stated the following:

> It is clear that neither the LSI-R nor the SASSI are intended nor recommended to substitute for the judicial function of determining the length of sentence appropriate for each offender. But such evidence-based assessment instruments can be significant sources of valuable information for judicial consideration in deciding whether to suspend all or part of a sentence, how to design a probation program for the offender, whether to assign an offender to alternative treatment facilities or programs, and other such corollary sentencing matters. The scores do not in themselves constitute an aggravating or mitigating circumstance because neither the data selection and evaluations upon which a probation officer or other administrator's assessment is made nor the resulting scores are necessarily congruent with a sentencing judge's findings and conclusion regarding relevant sentencing factors. Having been determined to be statistically valid, reliable, and effective in forecasting recidivism, the assessment tool scores may, and if possible should, be considered to supplement and enhance a judge's evaluation, weighing, and application of the other sentencing evidence in the formulation of an individualized sentencing program appropriate for each defendant.

* * * *

We hold that the results of LSI-R and SASSI offender assessment instruments are *appropriate supplemental tools* for judicial consideration at sentencing. These evaluations and their scores are *not intended to serve as aggravating or mitigating circumstances* nor to determine the gross length of sentence, but a trial court may employ such results in formulating the manner in which a sentence is to be served.

(emphasis added).

The Supreme Court's holding about how to use these assessment tools was further refined in a footnote in *J.S.* Although the appellant in *J.S.* was facing neither of these sentencing options, the Supreme Court announced the following:

Sentencing proceedings for determining whether to impose a sentence of death or life imprisonment without parole call for a departure from this rule. In cases involving whether to impose a sentence of death or life imprisonment without parole, a jury may determine the sentence and is entitled to consider any mitigating factor or circumstance. . . .In such cases, therefore, the results of an LSI-R or other similar evidence-based offender risk assessment instrument may be given consideration as an independent mitigating circumstance.

928 N.E.2d at 578 n.3. However, it is apparent that while the Supreme Court is inclined to approve of the use of results of an individual risk assessment instrument as a mitigating circumstance in those particular circumstances, it may not be used as an aggravating circumstance.

[16] In the trial court's oral statement regarding sentencing, which is quoted above, Morrell's IRAS was categorized as an aggravating circumstance. Further, in the written sentencing order, the trial court specifically refers to Morrell's "high score on the risk assessment" test as an aggravating circumstance. Appellant's App. Vol. II, p. 79. Therefore, to the extent Morrell's IRAS was labeled in both instances as an aggravating circumstance, the trial court erred.

[17] However, as the cases above inform us, the trial court is not prohibited from considering a defendant's assessment scores when fashioning an individualized sentence. The court is prohibited from labeling and finding it to be a separate aggravating circumstance. To the extent the likelihood of recidivism, as reflected by the assessment, coupled with Morrell's adult criminal history–three felony convictions and two misdemeanor convictions–could assist the trial court in determining Morrell's sentence, the error in labeling such as an aggravating circumstance was harmless.

## II.  Juvenile History

[18] Next, Morrell claims that the trial court abused its discretion by considering his juvenile history as an aggravating circumstance. Morrell's challenge is twofold. First, Morrell claims the trial court abused its discretion by considering juvenile contacts with the justice system that did not result in an adjudication as part of his criminal history. Second, Morrell alleges that the trial court abused its discretion by considering Morrell's juvenile adjudications from Florida as part of his criminal history, which was an aggravating circumstance. We address each argument in turn.

[19] Indiana courts have recognized that criminal behavior reflected in juvenile delinquency adjudications can serve as the basis for enhancing an adult criminal sentence. *See, e.g.*, *Simms v. State*, 421 N.E.2d 698, 703-04 (Ind. Ct. App. 1981). The Supreme Court has emphasized that it is the *criminal behavior* reflected in earlier proceedings rather than the adjudications that is the proper proof of a prior history of criminal behavior. *Jordan v. State*, 512 N.E.2d 407, 210 (Ind. 1987) (emphasis added).

[20] In *Day*, our Supreme Court explained as follows as respects juvenile proceedings:

> The details of criminal activity may be used to demonstrate a history of criminal activity when a juvenile court has determined that those acts were committed. When a juvenile proceeding ends without a disposition, the mere fact that a petition was filed alleging delinquency does not suffice as proof of a criminal history. . . . An adjudication of delinquency is not a fact that can be used by a sentencing court to enhance a criminal sentence. . . . The adjudication indicates that the history is correct. It elevates that history from allegation to fact.

560 N.E.2d at 643.

[21] Later, in *Fuller v. State*, 639 N.E.2d 344, 350 (Ind. Ct. App. 1994), a panel of this court held that the trial court did not impermissibly rely on the defendant's juvenile record, because unlike in *Day*, the record revealed the disposition of the juvenile offenses as well as the facts underlying the offenses.

[22] In *Mitchell v. State*, 844 N.E.2d 88, 92 (Ind. 2006), our Supreme Court noted that because juvenile adjudications provide juveniles with sufficient procedural safeguards, juvenile adjudications may be considered as prior convictions for purposes of sentencing adults under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (citing *Ryle v. State*, 842 N.E.2d 320, 322-23 (Ind. 2005)).

[23] Here, some of the juvenile history cited in Morrell's presentence investigation report does not indicate either a disposition or an adjudication. Of the juvenile offenses for which an adjudication was entered–one count of culpable negligence exposing another person to personal injury, one count of possession of cannabis as a misdemeanor, one count of possession of cannabis as a felony, and one count of purchasing cannabis as a misdemeanor–the report also discloses Morrell's admission to use of illicit or illegally obtained illicit substances such as marijuana used recreationally beginning at the age of fourteen. He also admitted that drug use has caused problems in his life. Therefore, the trial court properly considered the portion of Morrell's juvenile history resulting in adjudications and his supporting admissions to facts about his drug use as a juvenile.

[24] Next, Morrell argues that the trial court was prohibited from considering any of his juvenile history because those adjudications were entered in Florida. Under Florida law, according to Morrell, a trial court is prohibited from considering a defendant's juvenile history occurring more than three years prior to the commission of the instant offense. *See* Fla. Rule of Criminal Procedure

3.701(d)(5)(G) (1993);[3] *Puffinberger v. State*, 581 So.2d 897, 899 (Fla. 1991) (a juvenile record occurring more than three years prior to the current offense (or nonscoreable under Florida law) may nonetheless be considered only if it "contains dispositions that are the equivalent of adult convictions and only if the record is significant. . . ."). The State contends that because this argument was not raised and considered in the trial court, it is waived. *See Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018) (argument not raised in the trial court raised for first time on appeal generally not considered). However, our Supreme Court has held that "this Court and the Court of Appeals review many claims of sentencing error (improper consideration of an aggravating circumstance, failure to consider a proper mitigating circumstance, inaccurate weighing of aggravating and mitigating circumstances, etc.) without insisting that the claim first be presented to the trial judge." *Bell v. State*, 59 N.E.3d 959, 962 (Ind. 2016) (quoting *Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind. 2005)).

[25] Indiana Code section 35-38-1-7.1(a)(2) (2015) provides that when imposing a sentence, a trial court may consider that the person has a history of criminal or delinquent behavior. There is nothing in the language of the statute that prohibits a trial court from considering delinquency adjudications, supported by

---

[3] This section refers to sentencing guidelines. The particular subsection defines a defendant's prior record as "any past criminal conduct on the part of the offender, resulting in conviction, prior to the commission of the primary offense. . . . All prior juvenile dispositions that are the equivalent of convictions as defined. . . .occurring within 3 years of the commission of the primary offense that would have been criminal if committed by an adult, shall be included in prior record."

underlying facts, or adult criminal convictions entered in other states. We decline to read such a restriction into the statute.

[26] Further, the trial court's sentencing decision is supported by other aggravating factors that were properly identified. Morrell's adult criminal history consists of misdemeanor convictions for trespass, disorderly conduct, and domestic battery. He has prior felony convictions for assault and strangulation. He has had five petitions to revoke probation filed against him, with two pending. Additionally, the trial court identified as an aggravating circumstance Morrell's history of illegal alcohol and drug use. Morrell admitted to consumption of alcohol for the first time when he was thirteen years old and to last consuming alcohol on April 7, 2017.

[27] "A trial court may rely upon only one aggravating circumstance to support an enhanced sentence." *Veal v. State*, 784 N.E.2d 490, 494 (Ind. 2003). Here, the trial court had several valid aggravating circumstances upon which to enhance Morrell's sentence. Excluding Morrell's IRAS, and juvenile contacts not reduced to adjudications with supporting facts, the trial court properly found that Morrell had a criminal history and a history of illegal alcohol and drug use that warranted an enhanced sentence, especially in light of Morrell's admission that he was under the influence of at least drugs, if not alcohol as well, when he committed the instant offense. We do not find that the trial court abused its discretion by imposing an enhanced sentence.

# Conclusion

[28] The trial court erred by labeling Morrell's IRAS as an aggravating factor. However, the trial court was not prohibited from considering that score along with Morrell's criminal history when imposing a sentence. Indiana precedent allows a trial court to consider juvenile adjudications with supporting facts as a criminal conviction for purposes of review of a defendant's criminal history. A trial court is not prohibited by statute from considering juvenile adjudications from other states when reviewing a defendant's criminal history. Morrell's criminal history and admission of his history of illegal alcohol and drug use warrant his enhanced sentence.

[29] Affirmed.

Bailey, J., and Bradford, J., concur.