## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 31 2019, 6:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Courtney Lamar Parker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 31, 2019<br><br>Court of Appeals Case No.<br>19A-CR-826<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Diane Ross Boswell<br><br>Trial Court Cause No.<br>45G03-1712-F6-293 |

**May, Judge.**

[1]     Courtney Lamar Parker appeals his two-year sentence for Level 6 felony residential entry.[1] He argues the trial court abused its discretion by not recognizing as mitigating circumstances his medical problems and the hardship incarceration would have on his son. Additionally, Parker contends his two-year sentence is inappropriate given the nature of his offense and his character. We affirm.

# Facts and Procedural History

[2]     Patricia Torres and Parker have a child together. Patricia lived with Parker and Parker's girlfriend until April of 2017. She then moved in with her sister, Melissa Torres, and Melissa's boyfriend, Alex Velasquez, in a house in Hammond, Indiana.

[3]     In the early morning hours of April 8, 2017, Melissa and Velasquez were woken up by a loud pounding on the door. Patricia was not at the house at the time. Melissa went downstairs, realized the knocking was coming from the back door, which separated the living areas from a mud room.[2] The mud room was separated from outside the house by a locked storm door. Melissa asked, "who is it [?], who is it [?]" (Tr. Vol. III at 123.)

---

[1] Ind. Code § 35-43-2-1.5.

[2] Melissa described the mud room as "like an inner porch, is what I would say, best – we lounge there during summertime from the mosquitos, because we have a screened door. So it's an inside porch, is what I would consider it." (Tr. Vol. III at 124.)

Parker identified himself and asked about Patricia's location. Melissa also looked out a window and recognized Parker. Parker continued to knock on the door and demanded to talk with Patricia. Melissa informed Parker that Patricia was not at the house and asked him to leave. At some point, Parker went around to the front door. Melissa told Parker that she would shoot him with a shotgun if he did not leave, and Melissa called the police. Parker left before the police arrived. Melissa examined the house after Parker left and noticed the storm door was damaged. She testified the storm door "was pulled or pried open where it was yanked too hard where the lock no longer reaches to latch it, so it closes but it doesn't no [sic] longer lock." (*Id.* at 129.)

Throughout the day on April 8, 2017, Parker tried to contact Patricia by calling her between ten and twenty times, sending her text messages, and contacting her via Facebook. Between 10:00 pm and 11:00 pm, Patricia was in her room, lying on her bed, watching a movie on her laptop. Patricia's bedroom was located toward the front of the house with windows facing the front yard and street. Patricia observed Parker arrive at the house and knock on the front door. She then saw Parker look at her through her bedroom window. Patricia notified Melissa that Parker was at the door, and Melissa yelled that she was calling the police. Parker then threw a rock from the front yard through Patricia's bedroom window and ran away. Patricia testified that the rock landed on her foot and broken glass cut her forehead. Police apprehended Parker approximately ten minutes later outside a bar near the house.

[6]     The State charged Parker with Level 6 felony residential entry for breaking and entering Melissa's house in the early morning hours of April 8, 2017; Level 6 felony attempted residential entry for attempting to enter the house in the evening;[3] Level 6 felony auto theft;[4] Level 6 felony criminal recklessness;[5] and Class B misdemeanor criminal mischief.[6] The State dismissed the auto theft count prior to trial. The court held a jury trial beginning on January 28, 2019. The jury returned a verdict of guilty on the Level 6 felony residential entry count and not guilty on the remaining counts, and the court entered judgment on the verdict.

[7]     The trial court held a sentencing hearing on March 15, 2019. Parker acknowledged reviewing the presentence investigation report and did not have any additions, corrections, deletions, or comments. In 2006, Parker had pled guilty to dealing in cocaine as a Class B felony. A portion of his sentence was to be served on probation, but Parker did not satisfactorily complete probation. He was also convicted of Class C felony intimidation in 2006 and Level 6 felony theft in 2018. Neither Patricia Torres nor Melissa Torres testified at the sentencing hearing. As the deputy prosecutor explained, he spoke to them "and

---

[3] Ind. Code § 35-43-2-1.5; Ind. Code § 35-41-5-1.

[4] Ind. Code § 35-42-4-2.5.

[5] Ind. Code § 35-42-2-2.

[6] Ind. Code § 35-43-1-2.

their understanding was that with more trial dates upcoming, they were going to save their time off for those days[.]" (Tr. Vol. V at 5.)

[8] Parker, proceeding *pro se*, described his seven-year-old son as "the victim in this situation." (Tr. Vol. V at 12.) He had custody of his son prior to his incarceration. Parker noted that his elderly mother would have to take care of his son while he was incarcerated. He also stated that his son's mother, Patricia, had not seen his son in over three years. In addition, Parker stated he had an eight-year-old daughter, and the pre-sentence investigation report indicated Parker had one other adult daughter. Parker also referenced his health issues. His cardiologist advised him to quit working due to a heart condition and Parker was pursuing disability benefits prior to his arrest. He asked the court to sentence him to the time he had already served awaiting sentencing. Further, the pre-sentence investigation report revealed Parker had been shot in the abdomen in 2005. He had two surgeries and took pain medication daily.

[9] At sentencing, the State referenced Parker's criminal history. The State emphasized that Parker committed felony theft while out on bond in the instant case and that Parker was facing another charge for later conduct against the Torres family. The State pointed out that Parker had received probation in the past and failed to successfully complete it and that Parker served time in the Indiana Department of Correction in the past. The State asked for an aggravated sentence of two and a half years.

[10]     The trial court imposed a two-year executed sentence and awarded Parker credit for 214 actual days served. The sentencing order identified no mitigating circumstances and listed Parker's criminal history as an aggravating circumstance.[7]

# Discussion and Decision

## *Abuse of Discretion*

[11]     Sentencing decisions rest within the sound discretion of the trial court, and we review such decisions only for an abuse of discretion. *Morrell v. State*, 118 N.E.3d 793, 796 (Ind. Ct. App. 2019), *clarified on reh'g on other grounds*, 121 N.E.3d 577 (Ind. Ct. App. 2019), *trans. denied*. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances." *Allen v. State*, 875 N.E.2d 783, 788 (Ind. Ct. App. 2007). When a trial court imposes a felony sentence, it is required to issue a sentencing statement "that includes a reasonably detailed recitation of the trial court's reasons for the sentence imposed." *Anglemyer v. State*, 868 N.E.2d 482, 484-85 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 218 (Ind. 2007). If the court finds aggravating or mitigating circumstances, "the statement must identify all significant mitigating and aggravating circumstances and explain

---

[7] The order states Parker had four prior felony convictions, but this appears to be a scrivener's error because, in pronouncing sentence, the trial court said: "The Court gives you an aggravated sentence due to your prior history of three felony convictions." (Tr. Vol. V at 26.)

why each circumstance has been determined to be mitigating or aggravating." *Id*. at 490. A trial court may abuse its discretion in imposing sentence by failing to enter a sentencing statement, identifying aggravating and mitigating factors the record does not support, omitting reasons clearly supported in the record and advanced for consideration, or stating reasons for a sentence that are improper as a matter of law. *Id*. at 490-91.

[12] Parker argues the trial court abused its discretion by omitting from its sentencing statement reasons for a lighter sentence advanced by Parker, namely, the impact Parker's incarceration will have on his son with Patricia and his health problems. Indiana Code Section 35-38-1-7.1(10) provides the court may consider as a mitigating circumstance the undue hardship imprisonment will cause to the person or the person's dependent. As our Indiana Supreme Court has explained, "[m]any persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999). Parker asserts the special circumstance in his case is that Patricia is not involved in their son's life and Parker's elderly mother would have to care for their son while Parker is incarcerated.

[13] However, we do not find these to be special circumstances amounting to an undue hardship. The children of incarcerated individuals commonly stay with other family members. *See, e.g., K.E. v. Ind. Dept. of Child Servs.*, 39 N.E.3d 641, 644 (Ind. 2015) (child in care of paternal aunt while father was incarcerated); *In re Adoption of S.W.*, 979 N.E.2d 633, 635 (Ind. Ct. App. 2012) (child in care of

maternal grandparents while father was incarcerated). There is no indication Parker's son will suffer any hardship by staying with Parker's mother. Consequently, the trial court did not abuse its discretion by failing to consider this proposed mitigating circumstance. *See Dowdell*, 720 N.E.2d at 1154 (holding trial court did not abuse discretion by failing to find as a mitigating circumstance the undue hardship a long prison term might have on the defendant's young child).

[14] Regarding Parker's health issues, in *Moyer v. State*, we found the defendant's cancer to be a significant mitigating circumstance. 796 N.E.2d 309, 314 (Ind. Ct. App. 2003). The defendant required treatment the jail could not regularly provide, and he needed constant medical attention. *Id*. Parker provided limited testimony regarding his health, and he failed to put forth any medical records or other documentary evidence of impairment. He did not demonstrate that he will not be able to receive the care he needs while incarcerated. Consequently, the trial court did not abuse its discretion by not considering Parker's health issues to be a mitigating circumstance. *See Henderson v. State*, 848 N.E.3d 341, 345 (Ind. Ct. App. 2006) (holding no error when defendant did not present evidence medical conditions were untreatable while incarcerated).

### *Appropriateness of Sentence*

[15] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. App. R. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to

attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[16] A Level 6 felony is punishable by imprisonment for a fixed term of between six months and two and one-half years, with an advisory sentence of one year. Ind. Code § 35-50-2-7(b). Thus, Parker's two-year sentence falls within the statutory range. Parker argues the nature of his offense is minor. He notes he was convicted only of breaking the storm door and entering the mud room. The back door separated Parker from the living area of the house, and Parker did not break the back door. Nonetheless, the State notes Parker did not leave the house until Melissa threatened to call the police, and Parker broke the storm door's lock. As a result, we cannot say the nature of the offense was less egregious than a standard breaking and entering offense.

[17] A defendant's criminal history is relevant in assessing his character. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The significance of an offender's criminal history varies depending on the gravity, nature, and number of prior offenses in relation to the instant offense. *Id*. Parker notes that two of

his felony convictions were over twelve years old and that none of his previous felony convictions were for residential entry, burglary, or a related offense. However, Parker committed felony theft while out on bond for the instant offense. He has a long history of involvement with the criminal justice system. He accumulated three true delinquency adjudications as a juvenile and accrued numerous misdemeanor convictions as an adult. He previously served time in the Department of Correction, and he did not successfully complete probation in connection with his felony conviction for dealing in cocaine. He also faced pending charges at the time of sentencing for additional conduct against the Torres family. We cannot conclude an aggravated sentence in the instance case was inappropriate. *See Sanders v. State*, 71 N.E.3d 839, 845 (Ind. Ct. App. 2017) (holding defendant's sentence was not inappropriate given his criminal history and refusal to take advantage of rehabilitative services), *trans. denied*.

# Conclusion

[18] The trial court did not abuse its discretion by failing to consider as mitigating factors the impact Parker's incarceration will have on his minor children or Parker's health problems. Further, Parker's two-year sentence for Level 6 felony residential entry is not inappropriate given his lengthy criminal history. Accordingly, we affirm.

[19] Affirmed.

Najam, J. and Baker, J., concur.