


FILED

Oct 16 2025, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Joshua S. Carter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

---

October 16, 2025

Court of Appeals Case No.
25A-CR-710

Appeal from the
Lawrence Superior Court

The Honorable
Robert R. Cline, Judge

Trial Court Cause No.
47D02-2407-F4-1024

**Crone, Senior Judge.**

## Statement of the Case

Joshua Carter appeals the twenty-four-year sentence imposed by the trial court following his convictions of child exploitation and possession of child pornography. He contends that the trial court abused its discretion in sentencing him, that his sentence is inappropriate, and that the court improperly merged his convictions. We affirm and remand with instructions.

## Facts and Procedural History

In July 2024, Joshua Carter was charged with five counts of Level 4 felony child exploitation and five counts of Level 5 felony possession of child pornography. He subsequently pleaded guilty but mentally ill to all ten counts. At sentencing, the court merged several counts and sentenced Carter to two consecutive ten-year sentences and a consecutive four-year sentence, for an aggregate sentence of twenty-four years. Carter now appeals his sentence.

## Issues

Carter presents three issues for our review, which we restate as:

> I. Whether the trial court abused its discretion in sentencing Carter.

II. Whether Carter's sentence is inappropriate.

III. Whether the court erred in merging, rather than vacating, certain convictions.

# Discussion and Decision

## I. Abuse of Discretion

[4] Carter contends that the trial court abused its discretion during sentencing by finding aggravating circumstances not supported by the record and by rejecting certain proffered mitigating circumstances. "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Among the ways in which a trial court may abuse its discretion are including reasons for imposing a sentence that are improper as a matter of law or omitting reasons that are clearly supported by the record and advanced for consideration. *Id.* at 491. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions drawn therefrom. *Id.* at 490 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)).

### A. Aggravating Circumstances

[5] First, Carter argues that the trial court abused its discretion by finding that he had a prior conviction of possession of child pornography as an aggravating circumstance when he had not been convicted of such offense. *See* Tr. p. 62.

However, it appears from the record that the court simply misspoke. Although Carter did not have a prior conviction of possession of child pornography, he did have a prior conviction of activity related to obscene performance. Appellant's Confid. App. Vol. 2, p. 23 (Presentence Investigation Report).

[6] "When we can 'identify sufficient aggravating circumstances to persuade us that the trial court would have entered the same sentence even without the impermissible factor,'" we will affirm the trial court's decision. *Morrell v. State*, 118 N.E.3d 793, 796 (Ind. Ct. App. 2019), *clarified on reh'g*, 121 N.E.3d 577. While the trial court cannot use a nonexistent prior conviction as an aggravator, it can, and presumably did, properly consider Carter's prior conviction of activity related to obscene performance as an aggravating factor but simply misidentified the offense.[1] Given that a single aggravator is sufficient to support an enhanced sentence, *Allen v. State*, 722 N.E.2d 1246, 1253 (Ind. Ct. App. 2000), we are confident that the trial court would have imposed the same sentence here.

[7] Carter next asserts that the trial court improperly found the age of the victims to be an aggravating circumstance because this factor is also an element of the offenses.

---

[1] We note that Carter's prior conviction was also misidentified in Dr. Parker's report as a conviction of possession of child pornography. *See* Appellant's App. Confid. Vol. II, p. 39 (Independent Psychiatric Evaluation).

[8] At sentencing the court stated, "while the State[']s tendered aggravator of the victims [being] less than twelve (12) years old[] is improper in this case because . . . that's considered in the statute already[,] [i]t is something to note that the children were much younger than what was statutorily required to make the criminal charge itself." Tr. p. 63. Thus, read in the full context, the court rejected the State's proffer of the young age of the victims as an aggravator but went on to remark that the children were very young. This is merely a comment on the nature and circumstances of Carter's crimes, and a fact that is supported by the record. *See id.* at 45 (Internet Crimes Against Children Detective Robert Whyte testifying that images were of "toddler," "small infant," and "infant"). We also note that when the age of a victim constitutes a material element of the offense, the trial court may consider age as an aggravating circumstance if it sets forth particularized circumstances justifying such treatment. *McCoy v. State*, 96 N.E.3d 95, 99 (Ind. Ct. App. 2018). We find no error.

[9] Lastly, Carter claims the trial court erred by finding his touching of a child under the age of one as an aggravating circumstance because it is unsupported by the record. Our response to this argument is two-fold. First, based on the context of the court's remarks, it does not appear that the court designated this conduct as a separate aggravator but rather considered it in the assessment of Carter's overall character:

> So, I do find [ ], the having a prior [conviction] as an aggravator. Touching the child under one (1) year of age, which really, I

mean we talk about not prowling parks or schools and by his own admission he's acted upon this impulse. [ ] multiple strategies to hide [ ], being caught is an aggravator.

Tr. pp. 62-63.[2]

[10] Second, contrary to Carter's argument, this conduct is supported by the record. Carter admitted to this conduct during his psychological evaluation by Dr. George Parker, and the admission is contained in Dr. Parker's report. *See* Appellant's App. Confid. Vol. II, p. 40 (Independent Psychiatric Evaluation). The report was attached to Carter's presentence investigation report, and Carter's counsel specifically asked the court to judicially notice it. *See* Tr. p. 41. We find no error.

## B. Mitigating Circumstances

[11] Carter also alleges that the trial court abused its discretion with regard to mitigating circumstances. He argues that the trial court rejected his mental illness as a mitigating circumstance without proper consideration and that it erroneously gave little weight to his open plea of guilty but mentally ill.

[12] At sentencing, Carter pointed out that he pleaded guilty without a plea agreement, and he offered Dr. Parker's report as evidence of his mental illness.

---

[2] Although Carter's admission of this conduct was not considered a separate aggravating factor, sentencing courts may consider evidence of uncharged misconduct as a valid aggravator. *Singer v. State*, 674 N.E.2d 11, 14 (Ind. Ct. App. 1996).

Prior to issuing Carter's sentence, the court indicated that it had considered Dr. Parker's report and referred to Carter's mental illness and intellectual functioning. The court also stated that it was giving "a little weight" to Carter's plea of guilty. *Id.* p. 63.

[13] On appeal, Carter's argument amounts to an assertion that the trial court did not properly weigh his mental illness and his open plea as mitigators. Though declining to find Carter's mental illness mitigating and not assigning his open plea as much weight as Carter would like, the court considered both these circumstances in determining his sentence. A trial court is not required to accept a defendant's assessment of what constitutes a mitigating factor or assign proposed mitigators the same weight as the defendant suggests. *Mehringer v. State*, 152 N.E.3d 667, 673 (Ind. Ct. App. 2020), *trans. denied*. And in reviewing the trial court's finding of mitigators for an abuse of discretion, we cannot review the relative weight the trial court assigned to those factors. *Baumholser v. State*, 62 N.E.3d 411, 416 (Ind. Ct. App. 2016), *trans. denied*. Consequently, we conclude that the trial court did not err by failing to find Carter's mental illness as a mitigating factor or by assigning his guilty plea less mitigating weight than he desired.

## II. Inappropriate Sentence

[14] Indiana Appellate Rule 7(B) authorizes us to revise a sentence if we determine it to be inappropriate in light of the nature of the offense and the character of the offender. Although Rule 7(B) requires us to consider both of these factors,

the appellant is not required to prove that each of them independently renders his sentence inappropriate. *Turkette v. State*, 151 N.E.3d 782, 786 (Ind. Ct. App. 2020), *trans. denied*. Rather, they are separate inquiries that we ultimately balance to determine whether a sentence is inappropriate. *Id.*; *see also Lane v. State*, 232 N.E.3d 119, 126 (Ind. 2024) (confirming that while reviewing courts must consider both factors, defendant need not necessarily prove sentence is inappropriate on both counts). Our determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Sentence modification under Rule 7(B) is reserved for rare and exceptional cases. *Wilmsen v. State*, 181 N.E.3d 469, 472 (Ind. Ct. App. 2022) (quoting *Livingston v. State*, 113 N.E.3d 611, 612 (Ind. 2018)).

[15] Our Supreme Court has long said that sentencing is "'principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Lane*, 232 N.E.3d at 122 (quoting *Cardwell*, 895 N.E.2d at 1222). This deference prevails unless overcome by "'compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character).'" *Littlefield v. State*, 215 N.E.3d 1081, 1089 (Ind. Ct. App. 2023) (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)), *trans. denied*. The defendant bears the burden of

persuading the appellate court that his sentence is inappropriate. *Reynolds v. State*, 142 N.E.3d 928, 944 (Ind. Ct. App. 2020), *trans. denied*.

[16] Our analysis of the nature of the offense starts with the advisory sentence, as it is the starting point selected by the legislature as an appropriate sentence for the crime. *Reis v. State*, 88 N.E.3d 1099, 1104 (Ind. Ct. App. 2017). Carter was convicted of two Level 4 felonies, for which the sentencing range is between two and twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5 (2014). Carter was also convicted of one Level 5 felony, for which the range is between one and six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b) (2014). The court imposed two consecutive terms of ten years for the Level 4 felonies and a consecutive term of four years for the Level 5 felony, for an aggregate sentence of twenty-four years.

[17] To further assess the nature of Carter's offenses, we look to the details and circumstances surrounding them, including their heinousness and brutality and the defendant's participation therein. *Pritcher v. State*, 208 N.E.3d 656, 668 (Ind. Ct. App. 2023). In attempting to describe the heinous images Carter possessed, the trial court stated, "I don't even know how you would describe it in terms of how horrible it is[.]" Tr. p. 45. Detective Whyte testified that officers seized two phones, and a quick search on just one of the phones revealed more than 100 images. *Id.* at 44. The images depict depraved things being done to toddlers and infants. *See id.* at 45-46. Based on these images, Detective Whyte testified that this case would rank in the top five of the worst he has dealt with in the categories of child exploitation and possession of child pornography. *Id.*

at 46. Beyond the images Carter possessed, the court also considered Carter's admission to Dr. Parker that he touched a one-year old girl and his use of multiple strategies to avoid being found in possession of child pornography. *Id.* at 62.

[18] Turning to Carter's character, our analysis "involves a broad consideration of a defendant's qualities, including the defendant's age, criminal history, background, past rehabilitative efforts, and remorse." *Pritcher*, 208 N.E.3d at 668. As discussed previously, Carter has a prior conviction of similar conduct. Even a minor criminal history is a poor reflection of a defendant's character and demonstrates that he was not deterred by previous contact with the criminal justice system. *Harris v. State*, 163 N.E.3d 938, 957 (Ind. Ct. App. 2021), *trans. denied*. Through his actions, Carter perpetuated the victimization of these children. *See Brown v. State*, 912 N.E.2d 881, 895 (Ind. Ct. App. 2009) (quoting *U.S. v. Sherman*, 268 F.3d 539, 545 (7th Cir. 2001) ("even a 'passive consumer who merely receives or possesses the images directly contributes to this continuing victimization'")), *trans. denied*.

[19] Carter cites *Kelp v. State*, 119 N.E.3d 1071 (Ind. Ct. App. 2019) to support his request for sentence revision. There, the appellant was convicted of two counts of child exploitation and one count of possession of child pornography and was sentenced to an aggregate sentence of ten years. Carter points out that Kelp's sentence was shorter than his even though Kelp had amassed more pornographic images over a longer period of time.

[20] This Court may, but need not, look to sentences imposed in other cases when deciding whether the instant sentence is inappropriate. *See, e.g.*, *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010) (stating that in exercising our review power, we are not precluded from comparing defendant's sentence with sentences received by other defendants in similar cases). And we have generally found little value in this practice. *See, e.g.*, *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002) ("We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character."), *trans. denied*.

[21] Furthermore, *Kelp* is distinguishable from the present case. Kelp lacked a prior criminal record, whereas Carter has a prior conviction of a crime that is of the same nature of the crimes of which he now stands convicted. Additionally, the images possessed by Kelp were of teens and pre-teens, while those collected by Carter depicted children of extreme youth and particularly tender years. *See, e.g.*, *Hamilton v. State*, 955 N.E.2d 723, 727 (Ind. 2011) ("Like a defendant's criminal history, the victim's age also suggests a sliding scale in sentencing, as younger ages of victims tend to support harsher sentences. . . . The younger the victim, the more culpable the defendant's conduct.").

[22] Carter also points out that, unlike Kelp, he pleaded guilty in an open plea and suffers from a mental illness. However, as we discussed above, the trial court considered Carter's level of intellectual functioning but assigned it no mitigating weight and gave only a little weight to his plea of guilty but mentally ill.

Carter has not presented compelling evidence portraying the nature of his offenses or his character in a positive light so as to overcome the deference afforded to the trial court's sentencing decision. *See Littlefield*, 215 N.E.3d at 1089. Accordingly, we conclude that Carter's sentence is not inappropriate.

## III. Merger of Convictions

Finally, Carter contends that the trial court erred by merging, rather than vacating, some of his convictions.

At the sentencing hearing, the trial court implicitly determined that Carter should not stand convicted of all the counts due to double jeopardy concerns, stating: "As to count one (1), which is count one (1) merged with two (2), three (3), and six (6) because of the dates. I will find you guilty of child exploitation as a level four (4) felony. . . . With regard to count four (4), which is count four (4) merged with count five (5), I will find you guilty of child exploitation as a level four (4) felony. . . . On count seven (7), which is the merged count with eight (8), nine (19), and ten (10), I will find you guilty of possession of child pornography as a level five (5) felony." Tr. p. 63. Likewise, the court's written sentencing order indicates the counts are merged "for purposes of sentencing." Appellant's App. Vol. 2, p. 9 (Sentencing Order).

We have stated that a trial court's act of merging, without also vacating, the conviction is not sufficient to cure a double jeopardy violation. *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008), *trans. denied*. A double jeopardy violation occurs when judgments of conviction are entered and cannot be

remedied by the "practical effect" of concurrent sentences or by merger after conviction has been entered. *Morrison v. State*, 824 N.E.2d 734, 741-42 (Ind. Ct. App. 2005), *trans. denied*. We must therefore remand this cause to the trial court with an instruction to vacate Carter's convictions for Counts II, III, V, VI, VIII, IX, and X.

## Conclusion

We conclude that the trial court did not abuse its discretion in sentencing Carter and that Carter's twenty-four-year sentence is not inappropriate in light of the nature of his offenses and his character. We further conclude that the trial court's merger of certain convictions did not cure any double jeopardy violation. Accordingly, we affirm Carter's sentence but remand to the trial court with instructions to vacate his convictions for Counts II, III, V, VI, VIII, IX, and X.

Affirmed and remanded with instructions.

Foley, J., concurs.

Brown, J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Timothy M. Sledd
Lawrence County Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

**Brown, Judge, dissenting.**

[29] I respectfully dissent from the majority's conclusion that Carter's twenty-four-year sentence is not inappropriate. The Indiana Constitution requires meaningful appellate review of sentences. *See* IND. CONST. art. 7, § 6 (governing the jurisdiction of the Court of Appeals and providing that this Court "shall exercise appellate jurisdiction under such terms and conditions as the Supreme Court shall specify by rules which shall, however, provide in all cases an absolute right to one appeal and to the extent provided by rule, review and revision of sentences for defendants in all criminal cases"). This appellate authority is implemented through Appellate Rule 7(B) which requires that we consider the nature of the offense and the character of the offender. "We assess a sentence in light of the whole picture before us." *Lane v State*, 232 N.E.3d 119, 127 (Ind. 2024).

[30] Ind. Code § 35-50-2-5.5 provides that a person who commits a level 4 felony shall be imprisoned for a fixed term of between two and twelve years with the advisory sentence being six years. Ind. Code § 35-50-2-6 provides that a person who commits a level 5 felony shall be imprisoned for a fixed term of between one and six years with the advisory sentence being three years.

[31] My review of the nature of the offenses reveals that, on March 23, 2024, Carter disseminated an image depicting a child under the age of twelve years old engaged in sexual conduct. On May 30, 2024, Carter shared an image of a child under the age of twelve years old engaged in sexual conduct. On July 30,

2024, Carter possessed or accessed an image that depicted or described the sexual conduct of a child less than twelve years old. When the court asked if the children depicted in the images requiring a child less than twelve years of age were infants, Carter answered affirmatively. While these crimes are horrific, Indiana State Police Detective Robert Whyte indicated that he had no evidence that Carter financed or in any way instructed that those images be created.

[32] My review of the character of the offender reveals that Detective Whyte testified that Carter was cooperative when interviewed. Similarly, the probation officer completing the presentence investigation report ("PSI") stated that Carter was cooperative. Carter pled guilty but mentally ill to all charges without the benefit of a plea agreement. The PSI acknowledged that Carter's sister, Melissa, "maintains guardianship over him," and stated that Carter scored high for Family and Social Support. Melissa also cooperated fully with the police investigation of her brother and his confession to police. At the sentencing hearing, Melissa testified that she was Carter's "payee" because he was on disability, he had lived with her "off and on" since her father died, and she had "been taking care of him." Transcript Volume II at 32. She stated that he had never been able to maintain long-term employment and he did not function well when he lived by himself. She indicated she believed Carter would be able to live with her on electronic monitoring and that she could ensure, as his caregiver, that he would not have access to a phone or the internet. When asked how she could help ensure that the community would be

safe if Carter was allowed to live with her, she answered, "[F]or one thing I wouldn't let him go anywhere. Um which he didn't anyway, he's a home body. He just, he doesn't do anything, he doesn't go anywhere." *Id.* at 38. She also indicated that she had not known Carter to "prowl parks or . . . schools." *Id.*

[33] The PSI indicates that Carter was diagnosed with Asperger's Syndrome and that he received no mental health treatment. It also states that Dr. George Parker conducted an independent psychological evaluation on January 10, 2025. Dr. Parker's report states that Carter's "judgment was estimated to be limited by his autism spectrum disorder, but adequate" and "[h]is intelligence was clinically estimated to be in the range of low normal." Appellant's Appendix Volume II at 17. Dr. Parker diagnosed him with "Autism spectrum disorder," "Borderline intellectual functioning," and "Pedophilic disorder." *Id.* Dr. Parker stated that Carter's diagnoses of autism spectrum disorder and borderline intellectual functioning "have clearly impaired Mr. Carter's ability to think, feel, and behave appropriately throughout his life." *Id.* at 19. He also stated that "[i]t is possible his autism spectrum disorder contributed to his pedophilic disorder, as there is early research that suggests there is an association between pedophilia and autism spectrum disorder." *Id.*

[34] The PSI indicates that the State charged Carter with conversion in 2012 and that charge was dismissed with prejudice. The trial court stated that Carter had a "a prior conviction for possession of child pornography." Transcript Volume II at 62. However, the record does not support the trial court's statement.

Rather, the PSI indicates that Carter's only prior conviction occurred in 2014 for an "Activity Related to Obscene Performance" as a class D felony. Appellant's Appendix Volume II at 23. Under the heading "LEGAL HISTORY," Dr. Parker's report observed that Carter reported "a prior arrest for 'the same thing, not as much,'" when asked to identify the "same thing," Carter "explained 'child porn,'" he was charged "with possession of child pornography in April 2014," and he "pled guilty to obscene performance in December 2014." *Id.* at 16. The PSI indicates that Carter received a sentence of 912 days at the Department of Correction ("DOC") with 484 days suspended to supervised probation during which a probation officer was to supervise Carter's internet use to ensure he had no access to pornography. Carter did not violate his probation. The PSI states that Carter's overall risk assessment score using the Indiana risk assessment tool places him in the high risk to reoffend category but importantly also indicates that Carter "initially scored 'LOW' risk on the Indiana Risk Assessment System Community Supervision Tool" but his "risk level was professionally overridden to 'HIGH' risk based upon the recommendations set forth by the Indiana Risk Assessment System Community Supervision Tool regarding sex related offenses." *Id.* at 26.

[35] To the extent the trial court "highlighted the exact paragraph that the State talked about in Dr. Parker[']s report . . . especially that Mr. Carter had briefly touched a one-year-old girl once" and stated that "by his own admission he's acted upon this impulse," Transcript Volume II at 62, Dr. Parker's report did

not provide any detail regarding this touching or whether the touching amounted to a crime.

[36] My research of comparable cases reveals that Carter's twenty-four year fully executed sentence is an outlier. While there is no requirement we compare a defendant's sentence with sentences received by other defendants in similar cases, such comparisons can be a proper consideration when deciding whether a particular sentence is inappropriate. *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010). This is because "a respectable legal system attempts to impose similar sentences on perpetrators committing the same acts who have the same backgrounds." *Serino v. State*, 798 N.E.2d 852, 854 (Ind. 2003).

[37] In *Kelp v. State*, 119 N.E.3d 1071, 1072-1074 (Ind. Ct. App. 2019), the defendant admitted to collecting and distributing pornographic images, he had been in possession of child pornography for five years, and he might possess as many as one thousand pornographic images of children, some of whom were pre-pubescent. The defendant pled guilty to one count of child exploitation as a level 4 felony, one count of child exploitation as a level 5 felony, and one count of possession of child pornography as a level 5 felony in exchange for the dismissal of the remaining charges. 119 N.E.3d at 1073. The trial court sentenced Kelp to ten years for child exploitation as a level 4 felony, five years for child exploitation as a level 5 felony, and five years for possession of child pornography as a level 5 felony. *Id.* It also ordered the sentences be served concurrently, with seven years executed and three years suspended to probation. *Id.* We affirmed the defendant's sentence on appeal. *Id.* at 1075.

*See also Custance v. State*, 128 N.E.3d 8, 10-11 (Ind. Ct. App. 2019) (holding that concurrent sentences of five years with one and one-half years suspended to probation for child exploitation as a level 5 felony and two years for possession of child pornography as a level 6 felony was not inappropriate where defendant's collection of child pornography "appeared to be prolific and long-term," and the defendant, who had no criminal history, received a significant benefit for his guilty plea and was initially deceptive and attempted to mislead police); *Brown v. State*, 912 N.E.2d 881, 902 (Ind. Ct. App. 2009) (holding that an aggregate sentence of fourteen years for three counts of child exploitation as class C felonies and five counts of possession of child pornography as class D felonies was not inappropriate where defendant was found guilty by a jury, he was in possession of and/or made available to others hundreds to thousands of images of child pornography, defendant's criminal history included three felony convictions for operating while intoxicated as well as several alcohol-related misdemeanor offenses, he violated his probation on three occasions, and he had his sentence revoked on each occasion), *trans. denied*. Clearly, Carter's 24-year fully executed sentence is an outlier.

[38] I also note the steep cost to taxpayers of incarceration particularly in light of the facts that Carter pled guilty but mentally ill to all charged offenses, and he has a sister who testified that he would be able to live with her on electronic monitoring and that she could ensure, as his caregiver, that he would not have access to a phone or the internet. In 2023, the cost to incarcerate an inmate in the DOC was an average of $52.61 per day. *See* https://faqs.in.gov/hc/en-

us/articles/115005238288-How-much-does-it-cost-to-keep-an-offender-in-prison [https://perma.cc/8DGV-9QYY]. At sentencing Carter was credited with 280 days of incarceration. An approximate calculation of his incarceration figures, assuming good time credit of one day for every three days served, is approximately $350,000.00 utilizing 2023 costs, which will only increase.

[39] Additionally, the goals of incarceration are not just retribution, protection for society, and deterrence, but also rehabilitation of the offender. *See generally Abercrombie v. State*, 275 Ind. 407, 414, 417 N.E.2d 316, 320 (1981) ("[A]lthough the trial court is bound to consider the seriousness of the crime committed and the need to protect the community by sequestration of the offender, there are other objectives of a term of imprisonment which also must be considered. Under our constitution, the primary goal to be considered is the rehabilitation of the offender into a noncriminal member of society and any unique factors which support this goal must be carefully considered."). Indiana's sentencing system is founded upon principles of reformation and not vindication. *See* Ind. Const. art. 1 § 18.

[40] A lengthy prison term for an offender who had minimal criminal history and was diagnosed with "Autism spectrum disorder" and "Borderline intellectual functioning," Appellant's Appendix Volume II at 17, does not reflect the goals of reformation or rehabilitation. *See generally Does v. Snyder*, 834 F.3d 696, 704 (6th Cir. 2016) (noting the "significant doubt cast by recent empirical studies" on statements in *McKune v. Lile*, 536 U.S. 24 (2002), and *Smith v. Doe*, 538 U.S. 84 (2003), that the risk of recidivism posed by sex offenders is frightening and

high), *reh'g denied*, *cert. denied*, 583 U.S. 814, 138 S. Ct. 55 (2017); Ira M. Ellman & Tara Ellman, *"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 CONST. COMMENT. 495, 503-504 (2015) (summarizing the results of various studies, some suggesting the risk of recidivism within five years for low-risk sex offenders is similar to that of non-sex offenders and that sex offenders who have not reoffended after fifteen years are not high-risk for doing so regardless of their offense or initial risk assessment, and others suggesting that sex offenders are less likely to commit a new felony of any kind after release than other released felons); Patrick A. Langan, Erica L. Schmitt, & Matthew R. Durose, Bureau of Justice Statistics, *Recidivism of Sex Offenders Released From Prison in 1994*, at 1-2 (Nov. 2003), https://www.bjs.gov/content/pub/pdf/rsorp94.pdf [https://perma.cc/2H3J-58DV] (stating that, with respect to rearrests for any kind of crime, sex offenders were rearrested at a lower rate, 43 percent, than non-sex offenders, 68 percent).[3]

[41] Further, cognitive behavioral therapy is a recognized treatment for managing pedophilia and such treatment could be accomplished outside prison walls. *See generally* Margo Kaplan, *Taking Pedophilia Seriously*, 72 WASH. & LEE L. REV.

---

[3] In *Jackson v. State*, the trial court sentenced the defendant to consecutive sentences of twelve years on each of three counts of rape as level 3 felonies for an aggregate sentence of thirty-six years. *Jackson v. State*, 2019 WL 7342368, at *4 (Ind. Ct. App. 2019), *trans. granted*. I dissented from the majority's conclusion that the sentence was not inappropriate and noted the sources mentioned above. *Id.* at *10 n.8 (Brown, J., concurring in part and dissenting in part). The Indiana Supreme Court granted transfer, found that the sentence was inappropriate, and revised the sentence to twenty-seven years with seven of those years suspended to probation. *Jackson v. State*, 145 N.E.3d 783, 785 (Ind. 2020).

75, 93, 170 n.73 (2015) (discussing pedophilia treatment and observing that "successful treatment has focused on cognitive-behavioral therapy, often in combination with medication that reduces overall sexual desire") (citing in part Anthony R. Beech & Leigh Harkins, *DSM-IV Paraphilia: Descriptions, Demographics, and Treatment Interventions*, 17 AGGRESSION & VIOLENT BEHAV. 534 (2012) (discussing various psychological studies that show that therapy and medication has reduced recidivism by sexual offenders); MICHAEL C. SETO, PEDOPHILIA AND SEXUAL OFFENDING AGAINST CHILDREN 171-176 (2008) (providing an overview of various types of treatments for pedophilia and noting a study showing that cognitive-behavioral therapy resulted in a significant decrease in recidivism among sex offenders)).

[42] After due consideration, and in light of the record and the whole picture before us, I would find Carter's executed sentence of twenty-four years inappropriate.

[43] For these reasons, I respectfully dissent.